IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23 CR 00483-1 |
| ) | |
| THOMAS GIBSON, ) | Judge Joan H. Lefkow |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

In May 2022, a grand jury indicted Thomas Gibson for possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and for possession of marijuana in violation of 21 U.S.C. § 844(a). (Dkt. 1.) Gibson now moves to dismiss the firearm charge under Federal Rule of Criminal Procedure 12(b)(1). (Dkt. 25.) He argues that Section 922(g)(1), colloquially known as the "felon-in-possession" statute, violates the Second Amendment and is unconstitutional both facially and as applied to him. (*Id.* at 1.) Although a facial challenge to the constitutionality of Section 922(g)(1) is procedurally proper under Rule 12(b)(1) because the motion raises a defense "that the court can determine without a trial on the merits," as the court explains below, an as-applied challenge is not. Gibson's facial challenge is denied with prejudice and his as-applied challenge is denied without prejudice.

**BACKGROUND**

Count I of the indictment against Gibson charges him with knowingly possessing "a Glock Model 19 pistol … with an attached conversion device, also known as an 'auto sear' and 'Glock switch'" while "knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year" in violation of 18 U.S.C. § 922(g)(1). (Dkt. 1 at 1.)

Section 922(g)(1) provides that "[i]t shall be unlawful for any person … who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Gibson was arrested in June 2022 and remains in federal custody while awaiting trial. (Dkt. 18.)

## LEGAL STANDARD

An indictment is constitutionally sufficient if it "(1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States* v. *Chanu*, 40 F.4th 528, 539 (7th Cir. 2022) (quoting *United States* v. *Miller*, 883 F.3d 998, 1002 (7th Cir. 2018)) (cleaned up). Additionally, "[w]hen considering a motion to dismiss a criminal indictment, the Court assumes that the indictment's factual allegations are true and must 'view all facts in the light most favorable to the government.'" *United States v. Agee*, No. 21 CR 350-1, 2023 WL 6443924, at *1 (N.D. Ill. Oct. 3, 2023) (quoting *United States* v. *Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)).

## ANALYSIS

Gibson's motion asserts that he seeks to dismiss Count I of the indictment against him through both facial and as-applied challenges to the constitutionality of Section 922(g)(1). (Dkt. 25 at 1.) Yet Gibson's motion fails to develop any argument as to why this court should find Section 922(g)(1) facially unconstitutional. Aside from merely stating that Section 922(g)(1) is facially unconstitutional at the beginning and end of his opening brief, Gibson never states the relevant legal standards for facial challenges and never frames an argument in facial terms. Nor

does Gibson make any argument that could be construed to support a facial challenge. Gibson's facial challenge to Section 922(g)(1) is therefore waived. *See United States* v. *Williams*, 85 F.4th 844, 849 (7th Cir. 2023) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (quoting *Hakim* v. *Safariland, LLC*, 79 F.4th 861, 862 (7th Cir. 2023)).[1]

As to Gibson's as-applied challenge, Gibson's motion cannot proceed at this time for the same reasons that this court recently dismissed other, similar challenges to the application of Section 922(g)(1). *See United States* v. *James*, No. 23 CR 345, 2024 WL 168119 (N.D. Ill. Jan. 16, 2024) (dismissing without prejudice as-applied challenge to Section 922(g)(1) because movant failed to explain "the legal basis for the individualized assessment" he sought, failed to make "the necessary threshold showing that the Second Amendment applies to his conduct[,]" and improperly attacked "the substantive validity of a potential conviction" through a Rule 12(b) motion to dismiss the indictment); *United States* v. *Lopez*, No. 21 CR 626 (N.D. Ill. Jan. 2, 2024) (same).

Like the defendants in *Lopez* and *James*, Gibson argues—rather obliquely—that he is a "non-violent offender[.]" (Dkt. 25 at 8–9.) Also like Lopez and James, Gibson offers no factual allegations to substantiate this conclusory assertion. He states only that, "[b]ased on materials

---

[1] In his reply brief, Gibson does make an argument regarding Section 922(g)(1)'s "permanent" deprivation of the right to keep and bear arms. (Dkt. 30 at 14–38.) Although this facet of Section 922(g)(1) has led several district courts to hold the law facially unconstitutional, *see*, *e.g.*, *United States* v. *Cherry*, No. 23 CR 30112-SMY, 2024 WL 379999, at *5 (S.D. Ill. Feb. 1, 2024) (finding that "by imposing lifetime dispossession and criminalization," Section 922(g)(1) "clearly imposes a significantly greater burden on a convicted felon's right to keep and bear arms" than any proffered historical analogues); *United States* v. *Prince*, No. 22 CR 240, 2023 WL 7220127, at *11 (N.D. Ill. Nov. 2, 2023) (holding "permanent, categorical firearm dispossession of all felons" unconstitutional "as applied or on its face"), Gibson has waived this argument by raising it for the first time in his reply brief. *See Williams*, 85 F.4th at 849 ("Just as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs."); *see also White* v. *United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond.").

provided by the Pretrial Services Office and the government, [he] has three prior adult felony convictions for controlled substance offenses, one felony firearms offense and a felony DUI." (*Id.* at 2.) Relying only on this threadbare recitation of his prior offenses and the conclusional assertion that he is a "non-violent offender[,]" Gibson contends that under the "text and history" test expounded by the Supreme Court in *New York State Rifle & Pistol Association, Inc.* v. *Bruen*, 142 S. Ct. 2111 (2022), the government cannot carry its burden to establish the constitutionality of Section 922(g)(1) "because the historical record demonstrates that there is no longstanding tradition of preventing non-violent felons from possessing guns." (Dkt. 25 at 8.) As explained below, this court's reasoning in *Lopez* and *James* applies with equal force to Gibson's motion to dismiss, which the court concludes is substantively and procedurally improper and therefore dismisses without prejudice.

I. **Individualized Assessment**

First, Gibson has not explained the legal basis for the individualized assessment he seeks. "[A]n as-applied challenge targets a law 'in operation,' as it was applied to an individual, and limited to the specific facts of that case." *Solomon* v. *Cook Cnty. Bd. of Comm'rs*, 559 F. Supp. 3d 675, 686 (N.D. Ill. 2021) (quoting *Berron* v. *Ill. Concealed Carry Licensing Rev. Bd.*, 825 F.3d 843, 846 (7th Cir. 2016)). In *Atkinson* v. *Garland*, 70 F.4th 1018 (7th Cir. 2023), the Seventh Circuit declined to take sides in a circuit split as to whether the law permits an as-applied challenge akin to Gibson's that would create a carve-out from Section 922(g)(1) for "non-violent" offenders. *Id.* at 1023–24; *see also Range* v. *Att'y Gen. United States of Am.*, 69 F.4th 96, 106 (3d Cir. 2023) (granting as-applied challenge brought by plaintiff previously convicted of misdemeanor welfare fraud); *United States* v. *Jackson*, 69 F.4th 495, 504–06 (8th Cir. 2023) (concluding that "history demonstrates that there is no requirement for an

4

individualized determination of dangerousness as to each person in a class of prohibited persons" and rejecting as-applied challenge). Instead, *Atkinson* requires a party making such an as-applied challenge to explain (1) the "historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes"; (2) how to "define a non-violent or a non-dangerous felony"; and (3) "what evidence … a court [can] consider in assessing whether a particular felony conviction was violent[.]" *Atkinson*, 70 F.4th at 1023–24.

Although Gibson addresses some of these questions in his reply brief, he does so only in the context of advancing his (waived) argument that the government cannot *permanently* deprive non-violent felons of their right to keep and bear arms. (Dkt. 30 at 36–39.) And Gibson does not address at all the question of evidence posed by *Atkinson*, asserting that because "there is no dispute between the parties about the kinds of evidence the Court can consider[,] … the Court can save those issues for another day." (Dkt. 30 at 39.) While *Atkinson* does not, in so many words, order parties and courts to consider evidentiary issues, neither does *Atkinson* suggest that any evidentiary concerns should be addressed only when "there is [a] dispute between the parties about the kinds of evidence the Court can consider." (*Id.*); *see Atkinson*, 70 F.4th at 1023–24. More to the point, *Atkinson*'s question of whether "a court [can] consider the [prior] felony conviction itself, the facts of the underlying crime, or sentencing enhancements[,]" *id.* at 1024, is very much relevant to determining whether a defendant like Gibson is *in fact* a "non-violent offender" for the purposes of an as-applied constitutional challenge. Gibson's perfunctory assertion that he is a non-violent offender and his reference to broad categories of prior felony offenses are insufficient to develop an argument as to the prerequisites identified by the Seventh Circuit for the as-applied constitutional review he seeks. As such, Gibson has waived the issue. *See Williams* v. *Bd. of Educ. of City of Chi.*, 982 F.3d 495, 511 (7th Cir. 2020) ("perfunctory and

undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (quoting *United States* v. *Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Functionally, this failure—combined with the unsettled nature of the law overall—means that the court has no sense of the appropriate legal standards governing Gibson's motion or the kinds of evidence it must consider when determining how to resolve the motion. As a result, Gibson fails to demonstrate that Section 922(g)(1) is unconstitutional as applied to him, and the court must deny the motion.[2]

**II.    Second Amendment Threshold**

Furthermore, even if the court could reach the merits of Gibson's as-applied challenge, he has not made the necessary threshold showing that the Second Amendment applies to his conduct. The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *New York State Rifle & Pistol Ass'n, Inc.* v. *Bruen*, 597 U.S. 1 (2022), the Supreme Court adopted a "text and history" test to determine the constitutionality of firearm regulations under the Second Amendment:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude

---

[2] Many courts in this district have similarly faulted a party bringing an as-applied challenge for failing adequately to address the prerequisite questions laid out in *Atkinson*. *See United States* v. *Ball*, No. 22 CR 449, 2023 WL 8433981 (N.D. Ill. Dec. 5, 2023); *United States* v. *Brown*, No. 22 CR 326-1, 2023 WL 8236918 (N.D. Ill. Nov. 28, 2023); *United States* v. *Hall*, No. 22 CR 665, 2023 WL 8004291 (N.D. Ill. Nov. 17, 2023); *United States* v. *Brown*, No. 22 CR 297, 2023 WL 8004290 (N.D. Ill. Nov. 17, 2023); *United States* v. *Hardy*, No. 23 CR 129, 2023 WL 6795591 (N.D. Ill. Oct. 13, 2023); *United States* v. *Agee*, No. 21 CR 350-1, 2023 WL 6443924 (N.D. Ill. Oct. 3, 2023); *United States* v. *Gates*, No. 22 CR 397-1, 2023 WL 5748362 (N.D. Ill. Sept. 6, 2023).

>that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17. This test creates a clear threshold question that must be answered in the affirmative before the analysis can proceed to the historical inquiry: does the Second Amendment's plain text cover an individual's conduct?

Additionally, although *Bruen* puts the burden on the government to demonstrate a firearm regulation's consistency with historical tradition, the presumption that creates this burden-shifting is only triggered by clearing the threshold textual inquiry. Thus, consistent with the general rule that the moving party bears the burden of demonstrating entitlement to relief, the party challenging a firearm regulation must demonstrate in the first instance that the Second Amendment's plain text covers their conduct before the constitutional analysis can go any further. *See, e.g., United States* v. *Faulkner*, 793 F.3d 752, 757–58 (7th Cir. 2015) (initial burden on defendant in double jeopardy challenge to make *prima facie* showing of prosecution for identical crimes before burden shifts to government to show, by preponderance of the evidence, that indictments charge different crimes); *United States* v. *Vincent*, 416 F.3d 593, 600 (7th Cir. 2005) (same in challenge to grand jury proceedings); *United States* v. *Hunter*, 197 F.3d 862, 865 (7th Cir. 1999) (same in unfair delay challenge).

Here, to satisfy this burden, Gibson briefly asserts that his "conduct—the possession of a firearm—is covered by the plain text of the Second Amendment and is presumptively protected by the Constitution." (Dkt. 25 at 4; *see also id.* ("As the Supreme Court has explained, [the] plain language of the Second Amendment 'guarantee[s] the individual right to possess and carry weapons.'") (quoting *District of Columbia* v. *Heller*, 554 U.S. 570, 592 (2008)).) He then focuses the bulk of his textual analysis on arguing that he is a part of "the people" as used in the Second Amendment. (*Id.* at 4–8.) To be sure, analyzing who is included in "the people" for

7

Second Amendment purposes is an important and contested issue. *See Atkinson*, 70 F.4th at 1022–23. But it is not the *only* textual issue, and the brevity with which Gibson brushes aside the issue of his conduct ultimately prevents his entire argument from moving forward.

The Supreme Court has repeatedly stated that mere possession of a firearm is insufficient to bring an individual's conduct within the gambit of the Second Amendment. In *District of Columbia* v. *Heller*, the Supreme Court engaged in a lengthy textual analysis to conclude that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592. But the *Heller* Court then took pains to emphasize that this right "is not unlimited," does not "protect the right of citizens to carry arms for *any sort* of confrontation," and that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 595, 626 (emphasis in original). The Supreme Court has refined this holding in its subsequent cases. *McDonald* v. *City of Chicago* described the Second Amendment as protecting "a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home[,]" 561 U.S. 742, 780 (2010), and *Bruen* offered the even more succinct description that "the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense[,]" 597 U.S. at 17. As these cases make clear, proper analysis of whether conduct is covered by the Second Amendment's plain text involves inquiring not only into firearm possession, but also *the purpose* of that possession. Put differently, an individual suffers no constitutional injury if the government dispossesses them of weapons they had no lawful purpose for owning. *Cf. Bevis* v. *City of Naperville*, 85 F.4th 1175, 1194 (7th Cir. 2023) (plaintiffs bringing Second Amendment challenge to Illinois's assault weapons ban "have the burden of showing that the weapons

addressed in the pertinent legislation are Arms that ordinary people would keep at home for purposes of self-defense, not weapons that are exclusively or predominantly useful in military service, or weapons that are not possessed for lawful purposes.")

Determining the purpose for which someone possesses firearms is a question of fact. There are many lawful reasons a person may own a gun. *Heller*, *McDonald*, and *Bruen* emphasize self-defense as "central to the Second Amendment right[,]" *Heller*, 554 U.S. at 628, but of course, not everyone who owns firearms does so for protection. Other lawful purposes could include, for example, hunting, sport, and service in law enforcement. At the same time, there are many unlawful reasons for gun ownership, such as intimidation of others, offensive violence, facilitation of other crimes, armed insurrection. As a result, the court cannot simply infer lawful purpose from the fact of firearm possession. Instead, satisfaction of the threshold textual question requires some showing of lawful purpose by the movant.

The leading Second Amendment cases have not had much opportunity to discuss this requirement, as lawful purpose was established and not disputed in *Heller*, *McDonald*, *Bruen*, and *Atkinson*. *See Heller*, 554 U.S. at 576 (plaintiff's complaint construed as "seeking the right to render a firearm operable and carry it about his home in that condition only when necessary for self-defense"); *McDonald*, 561 U.S. at 750 (petitioners "are Chicago residents who would like to keep handguns in their homes for self-defense but are prohibited from doing so by Chicago's firearms laws"); *Bruen*, 597 U.S. at 15–16 (individual plaintiffs wanted to publicly carry a handgun for self-defense); *Atkinson* v. *Garland*, No. 21 C 291, 2022 WL 787934, at *1 (N.D. Ill. March 15, 2022) (plaintiff sought declaratory judgment that Section 922(g)(1) "unconstitutionally infringes his Second Amendment right to 'keep and bear arms' for self-defense at home."), *vacated and remanded*, 70 F.4th 1018 (2023). But the lack of discussion

does not make a showing of lawful purpose any less required by the Second Amendment analysis. Indeed, such requirement may particularly come into play where a movant seeks to justify the past possession of one or more firearms rather than prospectively affirm the legality of a proposed course of firearms possession or use.[3] In such circumstances the movant does not assert a generalized intention for the future but rather explains past conduct. The veracity and credibility of such explanations is much more easily tested with evidence than assertions of future intent, making disputes regarding purpose more likely.

Here, Gibson merely asserts that his conduct at issue is "the possession of a firearm." (Dkt. 25 at 4.) This is not enough to implicate the Second Amendment as Gibson never identifies the lawful purpose or purposes for his firearm ownership. Moreover, Gibson's description of his conduct is far too general. His conduct is not simply an abstract desire to possess a firearm but the alleged *actual possession* of the firearm identified in the indictment. *See Solomon*, 559 F. Supp. 3d at 686 (as-applied challenge considers "the specific facts of [the] case."). Gibson must therefore make a threshold showing that he possessed that firearm for a lawful purpose. The Constitution only presumptively protects Gibson's possession of a firearm for which he can make such a showing. *See Bruen*, 597 U.S. at 17. Lacking any such showing, the motion can go no further.[4]

### III. Rule 12(b)

Finally, in light of the above, Gibson's motion is improper under Rule 12(b). Although Gibson styles his request as a "motion to dismiss Count I of the indictment," the motion is not really a challenge to the sufficiency of the indictment but rather an attack on the substantive

---

[3] The plaintiffs in *Heller*, *McDonald*, *Bruen*, and *Atkinson* all sought prospective relief.

[4] Indeed, the government makes this same point in its response brief (dkt. 29 at 7), but Gibson inexplicably fails to address it in his reply brief (dkt. 30).

10

validity of a potential conviction. *See United States* v. *White*, 610 F.3d 956, 958–59 (7th Cir. 2010) (An indictment "that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive.") (citing *United States* v. *Smith*, 230 F.3d 300, 305 (7th Cir. 2000)); *United States* v. *Phillips*, 645 F.3d 859, 863 (7th Cir. 2011) ("Unlike a facial challenge, an as-applied challenge does not dispute the court's power to hear cases under the statute; rather, it questions the court's limited ability to enter a conviction in the case before it."). Such a motion may be brought under Rule 12(b) only if the court can resolve the motion "without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Gibson seems to suggest that his as-applied challenge is proper under this Rule because it only raises questions of law. (*See* dkt. 25 at 1 n.1 (citing *United States* v. *Stelmachowski*, No. 15 CR 339-1, 2018 WL 828078, at *6 (N.D. Ill. Feb. 12, 2018).) Not so.

      Although the factual bases necessary to evaluate Gibson's as-applied constitutional challenge and to sustain a conviction under Section 922(g)(1) are not identical, they are deeply connected. Possession of the firearm identified in the indictment is an element the government must prove to obtain a conviction, *see* 18 U.S.C. § 922(g)(1); the reason why Gibson possessed that same firearms is an initial showing Gibson must make to succeed on his constitutional challenge. He cannot do the latter without conceding the former. Similarly, the government also must prove the fact of Gibson's past convictions as an element of its case, *see id.*, while Gibson argues something about those same convictions makes him a non-violent offender to which Section 922(g)(1) cannot constitutionally apply. Again, Gibson must concede the former to argue the latter. In other words, succeeding on the as-applied challenge would require conceding key elements necessary to establishing Gibson's guilt. As a consequence, the court cannot resolve

11

Gibson's motion "without a trial on the merits." Fed. R. Crim. P. 12(b)(1). If Gibson is willing to make these concessions or otherwise chooses not to contest his factual guilt, the appropriate next step is to plead guilty while reserving the right to make an as-applied challenge.

### CONCLUSION AND ORDER

For the foregoing reasons, to the extent Gibson's motion relies on his facial challenge to Section 922(g)(1), the motion is denied with prejudice, and to the extent the motion relies on his as-applied challenge, the motion is denied without prejudice. The court recognizes that the law on this issue is very much in flux, that new Seventh Circuit or Supreme Court precedent could change the analysis, and that many courts to consider *Bruen* challenges to Section 922(g)(1) have reached the merits of those motions without consideration or discussion of the issues raised in this opinion. In light of the above, Gibson is permitted to bring a successive motion if he chooses, provided that he addresses the deficiencies identified in this order or makes reasoned arguments as to why the court should change its conclusions. Finally, as Gibson is considering his path forward, he should pay special attention to the kinds of factual showings that could establish lawful purpose. Because lawful purpose is a question of fact, the government must have an opportunity to dispute and/or rebut any evidence presented by Gibson. This means that Gibson must consider the Fifth Amendment consequences and potential exposure to cross-examination that he may incur if he relies on his own statements to make the necessary threshold showing of lawful purpose.[5]

Date: February 13, 2024

_U.S. District Judge Joan H. Lefkow_

---

[5] For example, the statement "I owned this gun for the purpose of self-defense" would satisfy *Bruen*, but it would also open the door to cross-examination regarding the statement.